# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

THE TRIAL COURT
SUPERIOR COURT DEPARTMENT
BUSINESS LITIGATION SESSION

kg

| | |
|---|---|
| HP INC., ) | |
| Plaintiff, ) | Civil Action No. |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| ACCESS ADVANCE LLC, DOLBY ) | |
| INTERNATIONAL AB, DOLBY ) | |
| LABORATORIES LICENSING CORPORATION, ) | |
| MITSUBISHI ELECTRIC CORPORATION, ) | |
| AND KONINKLIJKE PHILIPS N.V., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF HP INC.'S ORIGINAL COMPLAINT

Plaintiff HP Inc. ("HP") hereby files its Complaint against Access Advance LLC ("Access Advance"), Dolby International AB ("Dolby AB"), Dolby Laboratories Licensing Corporation ("Dolby Licensing") (collectively with Dolby AB, "Dolby"), Mitsubishi Electric Company ("Mitsubishi"), and Koninklijke Philips N.V. ("Philips") (collectively, "Defendants"):

## INTRODUCTION

1.    This case arises from Defendants' unlawful scheme to extract excessive royalties by refusing to offer HP fair, reasonable, and non-discriminatory ("FRAND"[1]) licensing terms for patents that are essential to the ultra-high-definition video technology standard known as either H.265 or High Efficiency Video Coding ("HEVC Standard"). HP committed to and stands ready

---

[1] Some standards bodies, courts, and commentators use the acronym "RAND" instead of "FRAND." These terms are interchangeable.

to pay a reasonable license fee under reasonable terms and conditions for the right to use the essential patents Defendants own and/or have rights to license on behalf of third parties. Despite HP's willingness to pay, Defendants demand duplicative, discriminatory, and excessive royalties, fees, and terms in violation of their contractual obligation to offer these patents on FRAND terms to all licensees.

2.     Defendants Dolby, Mitsubishi, and Philips each own numerous patents that the Defendants claim to be necessary to implement the HEVC Standard. Many industries (like video streaming) adopt universal standards to ensure that technology produced by one manufacturer will be compatible with technology produced by another. This way, for example, one can use any laptop with the necessary hardware and software to stream an ultra-high-definition movie from Netflix, regardless of whether the laptop was manufactured by HP, Dell, Lenovo, Apple, or another manufacturer.

3.     During the process of creating a universal standard (like the HEVC Standard), it is common for standard drafters, including manufacturers and other entities, to submit their technical contributions to the standards body that is responsible for defining the contours of the technical standard. As a result of this process, technology included in a standard is often claimed by multiple patents belonging to multiple owners. These patents are referred to as standard-essential patents ("SEPs"). Owning SEPs can therefore be extremely lucrative because every implementer of the standard in the industry must use those SEPs—and thus potentially have to pay a license fee to all SEP owners—in order to meet the requirements of the applicable standard.

4.     This can lead to abuse, however, as an SEP owner could successfully advocate for its patented technology to be incorporated into an industry standard, only to deny implementors a license to the SEP(s) unless they pay exorbitant royalties disproportionate to the value of the

patented technology.  This is because a SEP owner can potentially exclude the implementer from practicing the entire standard, even if the SEP owner's invention is directed to a small aspect of the standard.

5.      To prevent such exploitation of essential patents, SEP owners must usually agree, as a condition to having the technology recited in their patents incorporated into the relevant standard, to license their patents to any willing licensee on FRAND terms.  FRAND terms create a balance by ensuring that SEP owners are fairly compensated but cannot exclude willing licensees from the market or demand excessive royalties.

6.      Dolby, Mitsubishi, and Philips each made promises to license their video-coding SEPs ("HEVC SEPs") on FRAND terms to any willing licensee as a condition for having their claimed inventions incorporated into the HEVC Standard.  But these were empty promises.  Rather than offer FRAND rates to HP, these SEP owners have conspired to extract duplicative, discriminatory, and disproportionately high royalties and terms from HP, which seeks to implement the HEVC Standard.

7.      Dolby, Mitsubishi, and Philips perpetuated this scheme by contributing their HEVC SEPs into a pool ("HEVC Advance Pool"), which is administered by Access Advance as a "licensing agent."  Access Advance—which is a company created by Dolby, Mitsubishi, Philips, and others—acts on behalf of patent holders in the pool by negotiating license agreements for the HEVC Advance Pool.

8.      But Access Advance has not offered FRAND rates to HP.  To the contrary, Access Advance has a personal financial incentive to extract the highest royalties possible in negotiating patent licenses.  The reason is simple: the higher the royalties paid by a licensee to the HEVC

Advance Pool, the higher the fee collected by Access Advance (and ultimately its founders Dolby, Mitsubishi and Philips) as the pool administrator.

9.     HP has negotiated with Defendants for years in an attempt to obtain FRAND terms. Despite HP's willingness and good faith, Defendants refuse to honor their FRAND obligations. For example, HP already has a license to over 70% of the patents in the HEVC Advance Pool—so it only needs a license for the remaining less than 30%—yet Access Advance refuses to make a commensurate adjustment to its proposed license fee.  Dolby has engaged in the same tactic with respect to certain of its own HEVC SEPs that HP is already licensed to. Philips and Mitsubishi spent months redirecting HP to Access Advance for a license instead of making a bilateral offer and, to date, have not made a FRAND offer.

10.     To make matters worse, Dolby, Mitsubishi, Philips, and Access Advance hired the same law firm to commence litigation by not only suing HP in the Munich Regional Court and the Dusseldorf Local Division of the Unified Patent Court (the "German proceedings") for alleged infringement of various European patents in the HEVC Advance Pool that HP has been trying to license, but also by seeking injunctions aimed at preventing HP from implementing the HEVC Standard.  This is plainly an effort by Defendants, individually and collectively, to gain leverage and coerce HP to accept unfair and discriminatory licensing terms for SEPs around the world, including in the United States.

11.     Separately, Access Advance has violated its non-disclosure agreement with HP to assist with the litigation campaign.  HP and Access Advance have signed numerous non-disclosure agreements that bar the unauthorized use, dissemination, or publication of HP's confidential information, including information related to their licensing negotiations.  Yet Access Advance

has improperly shared HP's confidential information with Mitsubishi, Dolby, and Philips, who then filed HP's confidential materials in the German proceedings.

12.     Taken together, Defendants are engaged in a concerted effort to coerce HP to pay duplicative, discriminatory, and excessive royalties. At every turn, the Defendants band together to avoid their FRAND obligations. Without warning and days after HP asked for a call from Dolby about licensing its HEVC SEPs, Dolby, Mitsubishi, and Philips filed complaints in the German proceedings that were in many parts verbatim identical, referenced ill-gotten HP confidential information, and contained baseless allegations that HP is unwilling to license HEVC SEPs. When Dolby, Mitsubishi, and Philips realized they did not possess enough information to maintain their German proceedings, Access Advance intervened as a party to the suits to assist them. After HP's most generous offer to Dolby was communicated to the team responsible for managing Dolby's German proceeding, Dolby backtracked on a prior position it had taken, nearly doubled its prior demand, and reduced the number of patents subject to its proposed license by nearly half. When HP contacted Mitsubishi for a license, Mitsubishi insisted that HP obtain a license through Access Advance and refused to engage with HP for months. Philips did the same, and, to date (along with Dolby), has refused to offer important license terms that even Access Advance has offered.

13.     Defendants' motives are transparent: if they can coerce HP to accept Access Advance's unfair and discriminatory licensing terms, they will make more money. This is a money grab predicated on avoiding Defendants' FRAND obligations.

14.     Accordingly, HP seeks this Court's intervention to enforce Defendants' contractual obligations to license SEPs on FRAND terms and to respect HP's confidential information.

## PARTIES

15.     Plaintiff HP is a Delaware corporation with its principal place of business at 1501 Page Mill Road, Palo Alto, California 94304.

16.     On information and belief, Defendant Access Advance LLC is a Delaware limited liability company with a principal place of business at 100 Cambridge Street, Suite 21400, Boston, MA 02114.  Access Advance was formerly named HEVC Advance LLC.

17.     On information and belief, Defendant Dolby AB is a corporation organized under the laws of Sweden with its principal place of business in Amsterdam, the Netherlands.   On information and belief, Dolby AB is a wholly owned subsidiary of Dolby Laboratories, Inc.

18.     On information and belief, Defendant Dolby Licensing is a New York Corporation with its principal place of business located at 1275 Market Street, San Francisco, CA 94103.  On information and belief, Dolby Licensing is a wholly owned subsidiary of Dolby Laboratories, Inc.

19.     On information and belief, Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business at the Tokyo Building, 2-7-3 Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.

20.     On information and belief, Defendant Koninklijke Philips N.V.is a corporation organized under the laws of the Netherlands with its principal place of business at the High Tech Campus 5, 5656 AE Eindhoven, the Netherlands.

21.     On information and belief, each of Dolby, Mitsubishi, and Philips is a founding member and licensor member of Access Advance's HEVC Advance Pool.

## JURISDICTION AND VENUE

22.     This Court has subject-matter jurisdiction over HP's claims pursuant to Mass. Gen. Laws ch. 212, § 3, because the action is civil in nature and the amount in controversy exceeds $50,000.  This Court also has subject-matter jurisdiction over HP's claims pursuant to Mass. Gen. Laws ch. 212, § 4; ch. 214, § 1; and ch. 231A, § 1 *et seq.*

23.     This Court has general personal jurisdiction over Access Advance pursuant to Mass. Gen. Laws ch. 223A, § 2, because Access Advance has its principal place of business in Massachusetts. This Court also has specific personal jurisdiction over Access Advance pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a)-(b), because Access Advance has purposefully availed itself of the privilege of conducting business in Massachusetts and HP's claims arise from Access Advance's transacting business within Massachusetts.

24.     This Court has personal jurisdiction over Dolby AB pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a)-(b), because Dolby AB has purposefully availed itself of the privilege of conducting business in Massachusetts.  HP's claims arise from Dolby AB's transacting business in Massachusetts, and Dolby AB created and/or delegated licensing authority to Massachusetts-based Access Advance with respect to the SEPs that are at issue in this dispute.

25.     This Court has personal jurisdiction over Dolby Licensing pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a)-(b), because Dolby Licensing has purposefully availed itself of the privilege of conducting business in Massachusetts.  HP's claims arise from Dolby Licensing's transacting business in Massachusetts, and Dolby Licensing created and/or delegated licensing authority to Massachusetts-based Access Advance with respect to the SEPs that are at issue in this dispute.

26.     This Court has personal jurisdiction over Mitsubishi pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a)-(b), because Mitsubishi has purposefully availed itself of the privilege of conducting business in Massachusetts.  HP's claims arise from Mitsubishi's transacting business in Massachusetts, and Mitsubishi created and/or delegated licensing authority to Massachusetts-based Access Advance with respect to the SEPs that are at issue in this dispute.

27.     This Court has personal jurisdiction over Philips pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a)-(b), because Philips has purposefully availed itself of the privilege of conducting business in Massachusetts.  HP's claims arise from Philips's transacting business in Massachusetts, and Phillips created and/or delegated licensing authority to Massachusetts-based Access Advance with respect to the SEPs that are at issue in this dispute.

28.     Venue is proper in this Court pursuant to Mass. Gen. Laws ch. 223, §§ 1 and 8, because a substantial portion of the events giving rise to HP's claims occurred in Suffolk County and Access Advance has its principal place of business in Suffolk County.  Venue is also proper in this court pursuant to Superior Court Administrative Directive 24-1, because HP's claims include breaches of contract, business torts, and other claims involving business relationships.

## **FACTUAL BACKGROUND**

29.     HP is a leading technology company that aims to drive innovation and meaningful progress through its technology. Securing licensing for SEPs is critical to this goal. As such, HP negotiates in good faith as a willing licensee with Access Advance and the other Defendants.

### *The Role of Standard-Essential Patents and*
### *Standard-Setting Organizations*

30.     SEPs are patents that cover implementation of a technical standard issued by a standard-setting organization ("SSO") for a particular industry.

31.     Because technology claimed by SEPs are necessary to practice portions of the applicable technical standard, SEP owners could potentially exclude implementors like HP from practicing a standard by refusing to grant them a license, or SEP owners could demand excessive royalties not tied to the actual value of the invention.  To prevent such abuse, SSOs typically adopt policies that require that the SEP owner make a contractual commitment to license its SEP to any implementer on FRAND terms, as a condition of the SEP owner's participation in the creation of the standard and the SEP owner's claimed technology being considered for inclusion in a technical standard.

32.     For video compression, the relevant SSO is the International Telecommunication Union–Telecommunication Standardization Sector ("ITU-T"). This Swiss organization oversees the development of international standards related to numerous information and communication technologies, including the HEVC Standard for video compression.

33.     To have its patented technology included in one of the ITU-T's technical standards, a patent holder must commit in writing to license the patent claiming that technology to third parties on FRAND terms.  The ITU-T makes clear that a contributor to the technical standard who does not commit to license its SEPs on FRAND terms may have its contribution excluded from the standard.

34.     To have their patented technologies included in the HEVC Standard, Dolby, Mitsubishi, and Philips each made such commitments to license their respective SEPs on FRAND terms. These promises are binding, irrevocable agreements between the SEP owners and the ITU-T and courts have consistently held that third parties seeking to license these SEPs (like HP) are intended third-party beneficiaries of the contractual obligations between the SEP owners and the ITU-T and may demand SEP owners comply with their contractual duty to offer FRAND terms.

35.    HP is therefore entitled to enforce Dolby's, Mitsubishi's, and Philips's contractual obligations to license SEPs on FRAND terms and to stop Access Advance, as their agent and authorized licensing administrator of the patents, from reneging on the promises to license SEPs in the HEVC Advance Pool on FRAND terms.

### *The SEP Owners Form Access Advance*

36.    In or around 2015, Dolby, Mitsubishi, Philips, and other SEP owners grouped their patents for licensing purposes into the HEVC Advance Pool. Dolby, Mitsubishi, and Philips also formed Access Advance to act as the patent licensing agent for the HEVC Advance Pool. Access Advance and the founding members of the HEVC Advance Pool demand payment of alleged non-patent-related fees, which are in effect extra royalties for Defendants.

37.    HP first contacted Access Advance about licensing the HEVC Advance Pool in late 2015. At first, Access Advance did not respond. Access Advance began talking to HP in 2016, and the parties began negotiating terms of a patent license. But progress was slowed by Access Advance's refusal to consider issues specific to HP, including (among other things) the licenses to HEVC SEPs that HP obtained from other parties.

### *HP Obtains Licenses to Over 70%*
### *of the HEVC Advance Pool*

38.    Separately, HP obtained licensing agreements on FRAND terms with two other large licensing programs, including MPEG LA (in 2019) and Velos Media (in 2021). HP also negotiated bilateral licenses covering other patents that are now in the HEVC Advance Pool.

39.    After HP entered the MPEG LA and Velos Media agreements, numerous licensors left those programs and added their patents to the Access Advance HEVC Advance Pool. HP's license agreements with MPEG LA and Velos Media make clear, however, that HP retains all licenses and rights to all SEPs owned by licensors that were part of the MPEG LA and Velos

Media licensing programs at the time HP executed its respective licenses with each program, regardless of whether those licensors' SEPs are now in a different pool. Accordingly, HP does not owe additional royalties to Access Advance for licensing patents currently in the HEVC Advance Pool that were previously licensed to HP under the MPEG LA and Velos Media agreements (or through HP's bilateral license agreements).

40.     As a result of the agreements with MPEG LA, Velos Media, and other pool members, HP currently owns a license to over 70% of the patents that are in Access Advance's HEVC Advance Pool. HP is still willing to license, on FRAND-compliant terms, the remaining 30% of the HEVC Advance Pool that is not covered by HP's prior licenses. Defendants' actions have precluded HP from doing so.

### Defendants Refuse to Offer FRAND Terms and Sue HP in the German Proceedings

41.     Access Advance and HP continued their licensing negotiations into 2023. HP requested a royalty adjustment consistent with the fact that it already had a license to over 70% of the patents in the pool. Access Advance offered only a small discount, thereby insisting that HP effectively pay duplicative royalties for numerous SEPs it had already licensed if it wanted to obtain a license to the HEVC Advance Pool.

42.     In its negotiations, HP identified reasons why Defendants' proposed licensing terms, as set forth by licensing agent Access Advance, were not FRAND-compliant and were duplicative, discriminatory, and excessive: (1) they demanded excessive alleged non-patent fees that Access Advance refused to reduce in light of HP's prior licenses to over 70% of the HEVC Advance Pool; (2) they insisted on royalty payments for HP products sold without active HEVC functionality, which is contrary to HP's FRAND-compliant agreements with MPEG LA and Velos

Media that cover numerous patents in the HEVC Advance Pool; and (3) they refused to provide credit for SEPs that HP had already licensed through bilateral agreements.

43.    With Access Advance refusing to offer FRAND terms, HP sought bilateral licenses from the other Defendants directly.  But HP had no better luck seeking licenses bilaterally.

44.    In 2023, instead of negotiating in good faith to reach FRAND-compliant license agreements, Dolby, Mitsubishi, and Philips each sued HP in the German proceedings for infringement of certain European patents in the HEVC Advance Pool.  The German proceedings are a blatant effort to pressure HP, through the expense of patent litigation and the threat of injunctions, to sign a license agreement to the HEVC Advance Pool on supra-FRAND terms.

45.    Since those German proceedings began, Dolby has retracted previous bilateral license offers upon learning that those original offers were inconsistent with positions that Access Advance has now taken (particularly regarding whether HP would be given fair credit for its prior license agreements).  In this way, Dolby aligned itself with Access Advance and its supra-FRAND terms.

46.    The other Defendant SEP owners, Mitsubishi and Philips, were just as intractable as Access Advance.  None of them was willing to offer HP a bilateral license with FRAND terms. Mitsubishi, in fact, refused for months to even talk to HP and insisted that HP had to negotiate exclusively with Access Advance to gain a license to Mitsubishi's SEPs.  Philips, to date, has refused to offer reasonable terms relating to which HP products are royalty bearing.

### *Access Advance Breaches its Non-Disclosure Agreement with HP to Assist Its Founders in the German Proceedings*

47.    To make matters worse, Access Advance is assisting Dolby, Mitsubishi, and Philips in their patent infringement lawsuits in the German proceedings by violating its non-disclosure agreements with HP. The strikingly similar lawsuits contain information that Dolby, Mitsubishi,

and Philips could have obtained only from Access Advance.  In fact, Access Advance recently intervened in the German proceedings to further aid its founders in pursuing patent infringement claims against HP.

48.    HP and Access Advance have signed multiple non-disclosure agreements during the course of their licensing discussions.  These agreements bar unauthorized use, dissemination, or publication of HP's confidential information, including but not limited to the following: FRAND rate determinations, proposed licensing terms or offers, negotiations related to such licenses, non-public technical information related to HP products, and information related to infringement or validity of various patents.

49.    Access Advance improperly gave Dolby, Mitsubishi, and Philips access to confidential information provided by HP to Access Advance under the protection of the parties' non-disclosure agreements.  HP knows this because Dolby, Mitsubishi, and Philips have used confidential information that HP provided to Access Advance in the German proceedings by attaching materials protected by the non-disclosure agreements to their court filings.  This tactic breached the non-disclosure agreements, breached the Defendants' obligations of good faith and fair dealing, and was yet another effort to gain unfair leverage over HP to force it to pay duplicative, discriminatory, and excessive royalties, rather than engaging in good-faith negotiations over FRAND terms.

## CAUSES OF ACTION

## COUNT I - BREACH OF CONTRACT
### (Dolby, Mitsubishi, and Philips)

50.     HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

51.     Dolby, Mitsubishi, and Philips entered into express or implied contractual commitments to the ITU-T relating to the licensing of SEPs in the HEVC Standard. These contractual commitments are valid and enforceable.

52.     Dolby, Mitsubishi, and Philips are contractually obligated to offer licenses to their HEVC SEPs consistent with the licensing commitments and patent policy of the ITU-T. Accordingly, Dolby, Mitsubishi, and Philips promised to license their SEPs to all implementers of the HEVC Standard on FRAND terms, as confirmed through their written declarations to the ITU-T.

53.     As an implementor of the HEVC Standard, HP is an intended third-party beneficiary of these contractual commitments and is entitled to enforce them.

54.     Accordingly, Dolby, Mitsubishi, and Philips are contractually obligated to provide HP with a license to their HEVC SEPs on FRAND terms.

55.     Dolby, Mitsubishi, and Philips breached their contractual obligations by, among other things, refusing to offer HP licenses to their HEVC SEPs under FRAND terms, either directly or through their agent Access Advance.

56.     As a direct and necessary result of these contractual breaches, HP has suffered and continues to suffer damages of more than $50,000 in an amount to be proven at trial.

Date Filed 7/24/2024 9:03 PM
Superior Court - Suffolk
Docket Number

## COUNT II – BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (Dolby, Mitsubishi, and Philips)

57.     HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

58.     At all times relevant to this action, Dolby, Mitsubishi, and Philips have owed a duty of good faith and fair dealing to HP under the FRAND commitments to the ITU-T relating to the licensing of SEPs in the HEVC Standard.

59.     Through the conduct described herein, including the refusal to offer FRAND terms and conditions to HP for HEVC SEP licensing, Dolby, Mitsubishi, and Philips have breached the duty of good faith and fair dealing owed to HP.

60.     As a direct and necessary result of the breach of the implied covenant of good faith and fair dealing, HP has suffered and continues to suffer damages of more than $50,000 in an amount to be proven at trial.

## COUNT III - PROMISSORY ESTOPPEL
### (Access Advance)

61.     HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

62.     Access Advance's licensor members, including Dolby, Mitsubishi, and Philips, made clear and definite promises to the ITU-T to offer and grant a license to HEVC SEPs to all third parties who implement the HEVC Standard.  Likewise, as the licensing agent and pool administrator for its licensor members' FRAND-encumbered HEVC SEPs, Access Advance is obligated to and has promised to provide FRAND rates on behalf of its licensor members.

63.     HP has reasonably relied on Access Advance's public statements (e.g., marketing materials on its website) and commitments to implementers of the HEVC Standard to license patents in the HEVC Advance Pool on FRAND terms.

64.     HP has been injured by Access Advance's refusal to offer a FRAND-compliant license to HP.  For example, in reliance on Access Advance's promises to offer FRAND licenses to the HEVC Advance Pool, and to its detriment, HP expended substantial resources negotiating with Access Advance for a license to the HEVC Advance Pool.  Moreover, in reliance on Access Advance's representations and promises that it would offer FRAND-compliant licenses for its HEVC Advance Pool, HP invested in research and development, manufacturing, and marketing of its laptop and desktop products, some of which implement the HEVC Standard.  HP, a willing licensee, expected to be able to develop and market standard-compliant products without being subject to duplicative, discriminatory, and excessive royalties for HEVC SEPs.

65.     Access Advance should be estopped under the doctrine of promissory estoppel from reneging on its promises—on which HP relied—to implementers of the HEVC Standard and the public at large.

### COUNT IV - UNFAIR AND DECEPTIVE ACTS
### IN VIOLATION OF MASS. GEN. LAWS CH. 93A, § 11
### (All Defendants)

66.     HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

67.     At all times relevant to this action, Defendants are "persons" that have engaged in "trade or commerce" within Massachusetts and within the meaning of Mass. Gen. Laws. Ch. 93A.

68.     Defendants, by their conduct described above, willfully and knowingly engaged in unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, § 11.

69.     Defendants deceived HP by advertising through Access Advance that they would grant a license to HP for the HEVC Advance Pool and their respective patents within that pool on FRAND terms, but instead they have demanded a royalty rate that is inconsistent with their FRAND obligations.

70.     Although HP engaged in good faith and remained a willing licensee for years, Access Advance coordinated with the other Defendants in an effort to coerce HP to pay excessive royalty rates for patents in its HEVC Advance Pool.

71.     Such unfair and deceptive acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts.

72.     Defendant's unfair and deceptive acts and practices were a foreseeable cause of injury to HP.

73.     As a direct and proximate result of Defendants' unfair and deceptive conduct, HP has suffered and continues to suffer substantial injury.  HP is entitled to treble damages and reasonable attorneys' fees, costs, and interest in an amount to be determined at trial.

## COUNT V - DECLARATORY JUDGMENT
### (All Defendants)

74.     HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

75.     An actual, continuing, and justiciable controversy exists between HP and Defendants as to HP's right to a license of the HEVC SEPs on FRAND terms.  Absent a declaration of HP's rights to such licenses on FRAND terms, Dolby, Mitsubishi, and Philips will continue their refusal to offer the HEVC SEPs to HP on FRAND terms through bilateral agreements or the HEVC Advance Pool, which will continue to cause HP injury and damage. This dispute is of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

76.     Accordingly, HP is entitled to a judicial determination and declaration with respect to the following:

        a.     A declaration that Dolby, Mitsubishi, and Philips have not offered HP a license to their HEVC SEPs on FRAND terms and conditions;

        b.     A declaration that Access Advance has not offered HP a license to the HEVC Advance Pool (including the HEVC SEPs owned by Dolby, Mitsubishi, and Philips) on FRAND terms and conditions; and

        c.     A declaration of the FRAND terms and conditions for HP to license the roughly 30% of the HEVC Advance Pool to which it does not already have a license, specifically including these terms that are disputed by the parties:

        i.     A determination of the royalty rate to be paid by HP, including the discount HP is to receive on royalty rates and fees due to its pre-existing licenses to over 70% of the HEVC Advance Pool; and

        ii.     A determination that HP is not required to pay a royalty on HP products sold with HEVC technology in an encrypted, disabled, or otherwise unusable form at the time of sale.

### COUNT VI - BREACH OF NON-DISCLOSURE AGREEMENT
### (Access Advance)

77.     HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

78.     The non-disclosure agreements between Access Advance and HP are valid and enforceable contracts.

79.     HP performed its obligations under these non-disclosure agreements.

80.     Access Advance violated multiple provisions of these non-disclosure agreements, including by the following actions:

a.     Access Advance disclosed HP's confidential information—such as the methodology or formula that HP used to determine a proposed FRAND rate; information relating to noninfringement or invalidity of relevant patents; and technical information relating to HP products—to the other Defendants;

b.     Access Advance failed to provide reasonable notice to HP, prior to disclosing confidential information protected by the non-disclosure agreements and as required by the relevant non-disclosure agreements; and

c.     Access Advance failed to request a protective order to the extent it was required to reveal HP's confidential information under a subpoena, court order, or other operation of law.

81.     Access Advance's conduct has caused and will continue to cause substantial damages to HP of more than $50,000 in an amount to be proven at trial.

## **CONDITIONS PRECEDENT**

82.     All conditions precedent (if any) to HP's right to seek relief have been satisfied or waived.

## **PRAYER FOR RELIEF**

83.     HP respectfully prays that Defendants be cited to appear and required to answer herein accordingly to law, that this cause be set for trial before a jury, and that HP recovers judgment of and from Defendants.  HP respectfully requests that this Court enter judgment in its favor as follows:

a.      Enter judgment in favor of HP and against Access Advance, Dolby, Mitsubishi, and Philips;

b.      Adjudge and decree that Dolby, Mitsubishi, and Philips are liable for breach of contract for failing to comply with their FRAND obligations to the ITU-T and HP;

c.      Adjudge and decree that Dolby, Mitsubishi, and Philips breached their duty of good faith and fair dealing for refusing to offer FRAND-compliant terms and conditions for their HEVC SEPs;

d.      Adjudge and decree that Access Advance is estopped from refusing to offer FRAND-compliant licenses for their or their members' HEVC SEPs in its HEVC Advance Pool;

e.      Adjudge and decree that Defendants violated Massachusetts General Laws Chapter 93A;

f.      Adjudge and decree that HP is entitled to a license for HEVC SEPs from Defendants, either individually or collectively, under FRAND terms and conditions;

g.      Adjudge and decree that Dolby, Mitsubishi, and Philips have not offered HP a license to their HEVC SEPs on FRAND terms and conditions;

h.      Adjudge and decree that Access Advance has not offered HP a license to the HEVC Advance Pool under FRAND terms and conditions;

i.      Adjudge and decree the FRAND terms and conditions for HP to license the roughly 30% of the HEVC Advance Pool to which it does not already have a license, specifically including these terms that are disputed by the parties:

i.      A determination of the royalty rate to be paid by HP to one or more of the Defendants, including the discount HP is to receive in light of its pre-existing licenses to over 70% of the HEVC Advance Pool; and

        ii.     A determination of the royalty rate to be paid by HP on products sold with HEVC technology in an encrypted, disabled, or otherwise unusable form;

        j.     Award HP the amount of damages it proves at trial;

        k.     Award HP treble damages for damages it proves at trial for Defendants' violations of Massachusetts General Laws Ch. 93A;

        l.     Award HP all reasonable attorneys' fees and costs;

        m.     Award taxable costs;

        n.     Award pre-judgment and post-judgment interest as provided by law; and

        o.     Award HP other and further relief as this Court deems just and proper.

84.     By its Complaint and in seeking this relief, HP does not ask this Court for, and does not intend to ask this Court for, an anti-suit injunction, i.e., an injunction from this Court against the defendants from seeking or enforcing relief obtained in the German proceedings.

## **JURY DEMAND**

85.     HP requests a jury trial in this matter.

July 24, 2024

**ROPES & GRAY LLP**
By: */s/ William Davison*
William Davison
Mass. Bar No. 682390
Daniel V. Ward
Mass. Bar No. 667158
Amanda L. Pine
Mass Bar No. 707611
800 Boylston St.
Boston, MA 02199-3600
Telephone: (617) 951-7000
William.Davison@ropesgray.com
Daniel.Ward@ropesgray.com
Amanda.Pine@ropesgray.com

Matthew J. Rizzolo (*pro hac vice forthcoming*)
N.Y. Bar No. 4661344
2099 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 508-4600
Matthew.Rizzolo@ropesgray.com

**BECK REDDEN LLP**
Matthew P. Whitley (*pro hac vice forthcoming*)
Texas Bar No. 24037703
mwhitley@beckredden.com
Alistair Dawson (*pro hac vice forthcoming*)
Texas Bar No. 05596100
adawson@beckredden.com
Madison Young (*pro hac vice forthcoming*)
Texas Bar No. 24121281
myoung@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone No. (713) 951-3700
Facsimile No. (713) 951-3720

**ATTORNEYS FOR PLAINTIFF HP INC.**